( Decided October 28th, 1862.)

THOMAS E. HAMBLETON and FRANCIS H. HAMBLETON, *vs.* JOSEPH H. McGEE.

In an action of tort against several defendants, if, at the conclusion of the plaintiff's case, there is no evidence against one of the defendants, he is entitled to be acquitted; and such practice is conformable to reason, and necessary for the furtherance of justice; otherwise it would be in the power of a plaintiff to deprive defendants of the benefit of material and competent witnesses, by joining them in the action.

One of two defendants hired the horse of the plaintiff, then apparently sound, to drive a certain distance, and return, and afterwards drove the horse the stated distance. On the return, both the defendants occupied the vehicle in which the horse was driven, and both, on reaching the end of the journey, proceeded together to the stables of the plaintiff, and informed him that the horse was foundered, and where it was to be found. HELD, in an action to recover the value of the horse:

1st. That from these facts, it was competent for the jury to infer a joint contract of hiring, and that both of the defendants participated in the tortious act complained of.

2nd. That although the *onus* of proving want of diligence, and reasonable and proper care, was on the plaintiff, it was competent for the jury to infer those facts from the evidence in the cause.

APPEAL from the Court of Common Pleas of Baltimore city.

Action brought on the 10th day of September 1858, by the appellee, Joseph H. McGee, to recover from the appellants, Thomas Edward Hambleton, Jr., and Francis H. Hambleton, damages sustained by the appellee in the loss

of a horse, alleged to have been hired by him to the appellants. The declaration contains but one count, and is:—
"That the defendants hired from the plaintiff a horse, to drive from Baltimore city to the distance of twenty or twenty-one miles, in Baltimore county, and thence back to Baltimore city, in a proper manner, and the defendants drove said horse so immoderately that he died from the effects of said immoderate driving, and the plaintiff claims," &c. The defendants pleaded that they did not commit the wrong alleged.

*1st Exception.* The defendants' first prayer, offered at the close of the plaintiff's testimony, and rejected by the Court, with a summary of said testimony, will be found in the opinion of this Court, and constitute the first exception.

*2nd Exception.* The defendants then offered in evidence an agreed statement of the testimony of Victor Holmes, a competent witness, as follows: "One of the defendants, Francis H. Hambleton, arrived at the residence of Victor Holmes, at about seven o'clock, P. M., on the evening of the 4th of July 1858, having driven from the city of Baltimore, a distance of twenty-two miles, with a horse hired from the plaintiff; that the weather was warm; that the horse was very fat, and seemed much exhausted; that every care was taken to prevent the servants from giving him too much water or food, in his heated condition; that he was tied under a tree until sufficiently cooled to be put in the stable; that the defendants left the house of said Holmes at five o'clock, A. M., the following morning, on their return to the city; that the horse was then lame, but not too much so, in the opinion of said Holmes, to have been used for such journey; and that the time usually taken to go from Baltimore to said Holmes' residence, is about three hours." The defendants also proved, by J. Douglas Hambleton, that the defendant, Thomas Edward Hambleton, had not been in the city on the 4th of July, and then sub-

mitted to the Court two prayers, which were rejected; and no exception having been taken to the ruling of the Court, as appears from the record, said prayers are here omitted. The Court then instructed the jury as follows: "If the jury believe, from the evidence in the cause, that the defendants hired the horse, spoken of in the evidence, from the plain-tiff, at the time stated by the witnesses, and that the said horse was used by the defendants for the purposes for which he was hired, and that in the said use of the said horse, he suffered and was injured without any neglect or ill-usage, or want of reasonable and proper care on the part of the said defendants, then their verdict must be for the defend-ants. If, on the contrary, they shall believe that the said defendants, so hiring and using the said horse, or their servants or agents, did not use ordinary, reasonable and proper care in the said use of the said horse, then their verdict will be for the plaintiff. If they shall believe that only one of the defendants so hired and used the said horse, and by reason of his neglect or want of ordinary, reason-able and proper care, the said horse was injured, then they will find their verdict for the defendant whom they shall find not concerned in the said hiring and use of the said horse, and for the plaintiff, as against the other whom they shall find so negligent and wanting in reasonable and pro-per care." To this instruction of the Court the defendants excepted, and the verdict and judgment being for the plain-tiff, they appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*William A. Fisher* and *J. Douglas Hambleton,* for the ap-pellants:

There being no evidence against Thomas E. Hambleton, Jr., the Court should, at the close of the plaintiff's case

and evidence, have directed the jury to have found a separate verdict in his favor, in order that he might have become a witness for his co-defendant. 4 *Esp.*, 229, *Davey vs. Chamberlain.* 3 *Bar. Sup. Ct. R.*, 380, *Harrington vs. Snyder.* 6 *Carr. & Payne*, 213, *Child vs. Chamberlain.* 61 *Eng. Com. Law Rep.*, 710, *Neilan vs. Hanny.* 1 *Ch. Pl.*, 88. 15 *Johns.*, 222, *Van Deusen vs. Van Slyck.* 10 *Wend.*, 390, *Bates vs. Conklin.* 18 *Wend.*, 141, *Noyes vs. Hewitt.* 2 *Swan's R.*, 180, *Beasley vs. Bradley.* 11 *G. & J.*, 147, *Oliver vs. Palmer.* 1 *G. & J.*, 393, *Burch, et al., vs. Scott.*

The Court erred in submitting to the jury any question as to *neglect, ill-usage, or want or neglect of ordinary, reasonable and proper care*, under the pleadings in the cause, and in leaving to the jury to find whether the horse, spoken of in the evidence, "was hired and used by the *defendants* for the purposes for which he was hired." 4 *Md. Rep.*, 409, *Sasscer vs. The Farmers Bank of Md.* 6 *Md. Rep.*, 88, *Preston & Hepburn, vs. Leighton, use of Kelly, Ball & Co.* The *onus* was upon the plaintiff, to show neglect, ill-usage or want of reasonable and proper care, and the form in which the instructions were given, was calculated to mislead the jury. 2 *Kent's Com.*, page 764. 1 *Esp.*, 315, *Finucane vs. Small.* 5 *Barn. & Cress.*, 322, *Marsh vs. Horne.* 1 *Cow. R.*, 109, *Newton vs. Pope.* 13 *Johns. R.*, 211, *Millon vs. Salisbury.* 4 *Esp.*, 229, *Davy vs. Chamberlain.* 3 *Bar. Sup. Ct. Rep.*, 380, *Harrington vs Snyder.* 3 *Watts & Serg.*, 27, *Relf vs. Rapp.*

*Robt. C. Barry* and *O. Miller*, for the appellee :

From the facts included in the first exception, it was clearly competent for the jury to infer a *joint hiring and user*, and a joint responsibility therefor. 14 *Johns. R.*, 122, *Brown vs. Howard.* 1 *Phil. Ev.*, 61. *Buller*, 285. It is a matter in the *discretion* of the judge, to direct a ver-

Hambleton, *et al.*, *vs.* McGee.

dict to be entered for one defendant, before the *whole* case is closed. 1 *Phil. Ev.*, 54, 55. 6 *Adolph. & Ellis*, 407, *Sowell vs. Champion.* 6 *Queen's Bench, Adolph. & Ellis, N. S.*, 487, *White vs. Hill.* The question, whether there was negligence or not, was properly left to the jury. 4 *Gill*, 416, 422, *Stockton vs. Frey.*

BARTOL, J., delivered the opinion of this Court:

At the trial of this case, in the Court below, after the testimony of the plaintiff was concluded, the Court was asked to instruct the jury "that there was no evidence to charge the defendant, Thomas E. Hambleton, and that they must find a verdict in his favor." The refusal of the Court to grant this instruction forms the subject of the first bill of exceptions.

In actions for tort against several defendants, if, at the conclusion of the plaintiff's case, there is no evidence against one of the defendants, he is entitled to be acquitted; "so that all defendants, not fixed by the plaintiff's evidence, are to be acquitted before any part of the defence is gone into." This, said Parke, J., was the unanimous opinion of all the judges. *Child vs. Chamberlain*, 6 *Car. & Payne*, 213. (25 *Eng. C. L. R.*, 362.)

Such practice is conformable to reason, and necessary for the furtherance of justice; otherwise, it would be in the power of a plaintiff to deprive a defendant of the benefit of material and competent witnesses, by joining them in the action. See *Brown and others, vs. Howard*, 14 *Johns.*, 119. *Van Deusen vs. Van Slyck*, 15 *Johns.*, 225. *Beasley vs. Bradley*, 2 *Swan's (Ten.) R.*, 180. But the rule on this subject, laid down in the books, as correctly stated by Ch. J. Thompson, in *Brown vs. Howard*, is, "that if there is any, even the slightest evidence against a party defendant, he cannot be discharged as a party, and received as a witness." And he adds, "that the want of evidence against

a party, in order to entitle him to be a witness, should be so glaring and obvious as to afford strong grounds of belief that he was arbitrarily made a defendant to prevent his testimony." 14 *Johns. R.*, 122.

Applying this rule to the case before us, we are of opinion that the decision of the Court of Common Pleas, as stated in the first bill of exceptions, was correct. The evidence on the part of the plaintiff, showed that the horse was hired on the 4th day of July, by Francis H. Hambleton. On the next day both the defendants, riding together, stopped, on their way to the city of Baltimore, at the house of John O. Price, in Baltimore county. The witness, Price, was unable to say which of them was driving. The horse at that time was foundered ; the witness advised *them* to go on, as he thought that with care the horse would be able to go to Baltimore, but offered to let *them* have another horse. On that evening both the defendants went to the livery stable of the plaintiff, and informed him where the horse then was. He was badly foundered, was placed in the hands of a veterinary surgeon, and died in a few days. From these facts, it was competent for the jury to infer that the contract of hiring, though made by one of the defendants, was in fact made on behalf of both ; or, if not, there was evidence from which the jury might find that both the defendants participated in the tortious act complained of.

After all the evidence was concluded, the defendants offered two prayers, which were refused ; but no exception being taken to their rejection by the Court, they are not properly before us for consideration. Exception was taken by the defendants to the instruction given by the Court to the jury, and their second bill of exceptions brings up that instruction for review. It will be found *ante page* 45.

We find no error in this instruction. It is not objectionable, as urged, on the ground that the facts of the hiring and use of the horse were assumed by the Court. Nor was

Hambleton, *et al.*, *vs.* McGee.

it erroneous in leaving to the jury to find that the defendants hired and used the horse. We have already said that there was evidence from which the jury might find that the horse was hired for and on behalf of both defendants, and was used by them. The chief objection made in the argument, was that there was no evidence whatever to go to the jury in proof of any "ill-usage or neglect on the part of the defendants, or the want of ordinary, reasonable and proper care," in using the horse.

We agree with the appellants' counsel, that the *onus* of proving want of diligence, and reasonable and proper care, was on the plaintiff. This is the general rule, as stated in *Story on Bailments, sec.* 410; and there is nothing in the instruction to relieve the plaintiff below of that *onus.* But surely it cannot be said there was no evidence from which the jury might find a want of reasonable care in this case.

The horse, when hired, was sound and in good condition; on the following evening, when returned, he was "badly foundered, hardly able to walk," and died in a few days. One of the witnesses stated that, in his opinion, the horse was foundered by "hard driving." On this last point several witnesses testify that a horse may be foundered when properly and carefully used. But that was a question for the jury, properly left to them by the Court's instruction, and they found the fact against the appellants. We see no reason for disturbing the judgment.

*Judgment affirmed.*