Nolde v. WDAS Broadcasting Station, Inc.,
Appellant.

Argued October 6, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Louis Levinson,* and with him *Isaac D. Levy,* for appellant.

*James W. Tracey, Jr.,* and with him *George W. Phillips,* for appellee.

OPINION BY STADTFELD, J., March 3, 1933:

This was an action of assumpsit by plaintiff to recover the value of a fur coat which had been lost or stolen in the reception room of defendant company which conducted a broadcasting station located in the Elks' Hotel Building on North Broad Street, in the City of Philadelphia. The case was tried by the court without a jury. The court refused defendant's request for binding instructions and overruled its motion for judgment non obstante veredicto, and, in an opinion by GABLE, J., found for plaintiff and entered judgment in the sum of $250. From that judgment this appeal is taken by defendant.

Plaintiff late in the afternoon of February 1, 1932, was invited, through a telephone call, by one Laughton Thomas, an announcer in the employ of defendant, to sing over defendant's station in place of another artist who for some reason was unable to appear. It was admitted that plaintiff was not to receive any compensation for her services. She arrived at about 7:20 or 7:25 in the evening and entered the reception room where she met her accompanist, one Mr. Wildey, a programme and musical director of defendant and the said Laughton Thomas. Mr. Wildey was present when Mr. Thomas invited plaintiff to come to the studio. She claims also that a Mr. Bigley, chief announcer of defendant company, was there when she arrived but she had no conversation with him at the time. Thomas testified on behalf of plaintiff that he engaged plaintiff

with the consent of Wildey. The reception room is located on a mezzanine floor above the main lobby of the hotel and is part of the studio of defendant consisting of one large room with several partitions. The reception room is separated from the studio proper by a corridor about 3½ to 4 feet wide; it can be reached by a stairway from the lobby of the hotel. You can also reach the studio direct by elevators from the lobby. There are glass partitions so that the reception room is visible from the broadcasting room. There are other rooms divided by partitions and used by salesmen and the clerical force of defendant company.

When plaintiff entered the reception room she took off the fur coat she was wearing and placed it upon a table and then picked it up from the table and hung it upon a costumer or rack in this reception room. At no time was the coat placed in the custody of any individual. She then entered the broadcasting room where she sang. After completion of her programme at 8 P. M., she returned to the reception room where she discovered that the coat had been stolen.

Plaintiff, according to her own testimony, knew that the reception room was off the foyer or lobby of the hotel and that it was an open room to which any one could have access. It also appeared that many people go in and out of this room at all hours of the day and night.

On behalf of defendant, there was testimony that neither Thomas nor Bigley had any authority to engage any talent, and that Wildey could engage talent only with the approval of the officers of the company. There was also testimony that most people who go into the studio take their wraps with them.

Appellant contends that there was no evidence of authority on the part of Thomas to engage plaintiff to broadcast at defendant's studio. This becomes unimportant under our view in disposing of this case. At all events defendant company utilized the services

of plaintiff and would be estopped from denying the authority of Thomas.

The controlling question in this case is that of the duty devolving on defendant in the care of plaintiff's coat.

If the relation of bailor and bailee arose, the rule applicable is correctly stated in 3 R. C. L. 93, 94, as follows: "Unless made so by express contract, an ordinary bailee, no matter to what class he belongs, is not an insurer of goods delivered into his keeping, although, as respects a few special kinds of bailees, as carriers and innkeepers, it seems that public policy makes them such."

If defendant was a gratuitous bailee, or a bailee without reward, it was bound to slight diligence only, and not answerable except for gross negligence.— Story on Bailments. See 621.

If however, by reason of the invitation extended by defendant to plaintiff to appear at defendant's studio, it be assumed that the ordinary relation of bailor and bailee arose, then defendant would be liable only for the want of ordinary care and diligence in the safeguarding of plaintiff's property. The same principles are set forth and discussed in Woodruff v. Painter, 150 Pa. 91.

In Knowles v. Atlantic and St. Lawrence R. R. Co., 38 Me. 55, 60, the court said: "Thus when the bailor or depositor not only knows the general character and habits of the bailee or depositary, but the place where and the manner in which goods deposited are to be kept by him, he must be presumed to assume, in advance, that his goods shall be so treated; and if under such circumstances, they are damaged or lost, it is by reason of his own fault or folly. He should not have entrusted them with such a depositary to be kept in such a manner and place."

Likewise, in American Dist. Tel. Co., v. Walker, 72 Md. 454, cited with approval in 3 R. C. L. 97, "If it

is (the goods) lost through a failure to observe such duty (ordinary care) he is answerable, but of course he is not responsible for any losses not occasioned by the ordinary negligence of himself or his servants; he will not therefore be liable for any loss by thieves, or for any taking from him or his servants by force or where the owner accompanies the goods to take care of them and is himself negligent.''

It must be borne in mind, however, that in the instant case, the coat was not delivered into the custody of any individual; besides plaintiff knew that the reception room was open and any one could have access thereto from the foyer of the hotel. Under these circumstances, she must be 'presumed to have assumed the risk of loss. It is similar to the case of one who hangs his coat on a rack or hook in a restaurant where many people resort. It would not be contended that the proprietor of the restaurant would be responsible for the loss or theft of a coat under such circumstances. As stated in 22 Cyc. 1086: ''Where the customer himself hangs up his coat without notice to the restaurant keeper or his servants, there is no bailment, and the restaurant keeper cannot be held responsible for its loss unless it be shown that he was remiss in his general supervision of the restaurant.'' Citing, Montgomery v. Ladjing, 61 N. Y. Suppl. 840.

Neither actual nor implied bailment or constructive custody having been established, there is no evidence of such negligence on part of the defendant in the general supervision exercised over the reception room, such as it was, for the protection of visitors' property in general. The burden of proof upon this point was upon the plaintiff; for it is only in a case of a bailment that the burden is cast upon a bailee to account for the loss of the goods. But the plaintiff rested her case, upon this point, upon the bare fact of the loss.

We do not think that the evidence discloses any liability on the part of defendant.

The cases cited by appellee are readily distinguishable from the instant case.

The assignments of error are sustained, the judgment reversed and judgment now entered for defendant.