MICHAEL J. WHITE ET AL. *v.* LOTTIE PARKS.

[No. 61, October Term, 1927.]

196

*Decided January 11th, 1928.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*A. Taylor Smith* and *Horace P. Whitworth,* with whom was *Taylor Morrison* on the brief, for the appellants.

*William C. Walsh* and *Frank A. Perdew,* for the appellee.

PARKE, J., delivered the opinion of the court.

The appellants, Michael J. White, Thomas L. White and Charles A. White are co-partners trading as White Brothers, and they have a sales agency for automobiles at Westernport, Allegany County. The appellee, Lottie Parks, and her husband, James Parks, lived across the Potomac River from Westernport in Piedmont, West Virginia. Charles A. White, one of the partners, learned that the appellee and her hus-

band had under consideration the purchase of an automobile, and went to their home on Sunday afternoon, September 26th, 1926, for the purpose of showing the operation of an automobile, in order to sell one for his partnership. He suggested that the prospective purchasers and Mr. and Mrs. E. P. Wilt, who were present, go with him for a ride in the automobile, in order that he might have an opportunity to give a practical demonstration of its merits. The invitation was accepted, and White drove away with his four guests, the appellee sitting on the front seat next to the driver, and her husband and the other two guests on the back seat. After White had driven the automobile some distance, he suggested that the appellee, whom he knew to be an inexperienced driver, should begin learning to operate the automobile. Mrs. Parks exchanged places with White, and drove for some eighteen miles under his supervision. The highway was wide, and its surface hard and smooth, and the appellee drove slowly and carefully, and was proceeding in this manner and at the reduced speed of from ten to fifteen miles an hour, when a point was reached at the end of a sharp curve where it became necessary to turn the steering wheel to straighten out the machine, so as to keep in the road, and to avoid a steep bank which came down within two feet of the right edge of the highway. It was then the accident happened, the automobile running up the bank, falling back on its left side, and injuring the appellee. The appellee brought an action against the appellants to recover damages, and the verdict of the jury awarded her twenty-five thousand dollars, which the trial court remitted to twelve thousand dollars, the amount of the judgment from which this appeal is taken.

The only exception is on the prayers. The first prayer of the appellee simply instructed the jury that the appellants were partners and the owners of the automobile. This prayer was conceded, and the court granted appellee's second prayer in connection with the prayers of the appellants; and also granted appellee's third prayer, and the first, second, fourth, fifth, sixth and eighth prayers of the appellants, and rejected their A, B, C, third, and seventh prayers.

The A, B and C prayers were demurrers to the legal sufficiency of the evidence to support a finding for the appellee by the jury. The evidence on the part of the appellee tended to show that the proximate cause of the accident was the negligence of White, who, according to this testimony, was looking toward and talking to the persons on the rear seat, when suddenly, without any apparent cause, he turned, seized the steering wheel, jerked it from the control of the appellee, and turned it so as to run the automobile up the bank, whereby it overturned and the appellee was hurt. On the other hand, there was evidence on the part of the appellants from which the jury could have inferred that White did not touch the steering wheel until after the appellee had brought about her mishap, by so negligently operating the automobile as to run it off the road and up the bank, before White had an opportunity to avoid the accident. This conflict of proof left the issue of fact for the jury, as it needs no argument to enforce the point that the testimony offered in behalf of the appellee, if true, was sufficient in law to charge the appellants with negligence. The appellees made no contention on brief in support of these three demurrer prayers.

The appellants' third prayer imposed upon the appellee the burden of establishing the "state of facts alleged in the declaration," and instructed the jury to find for the appellants if the testimony should "leave the minds of the jury in a state of even balance as to the truth of the allegations in the declaration." The prayer was approved in this form in *Pillard v. Chesapeake Steamship Co.,* 124 Md. 468, 475, where it was accepted as the ordinary form of an instruction on the burden of proof in negligence cases, but no mention was made in the decision of the prayer's reference to the "state of facts alleged" in the declaration, as constituting the measure of the quantity of proof required of the plaintiff to establish by the weight of evidence before he could recover. In its offered form, the prayer is inapplicable, unless the declaration contained no allegation of fact other than those which were essential to the cause of action, and the proof

at the end of the trial presented no facts entitling the plaintiff to a recovery other than those alleged in the declaration. As was pointed out in the case of *United Rwys. Co. v. Cloman,* 107 Md. 681, 694, 695, where a similar prayer was rejected on the ground that, as in the pending appeal, the declaration contained unessential or redundant allegations, and that a plaintiff might establish the facts requisite for a recovery by proving less than he had alleged and yet the jury would be instructed to find for the defendant, if the jury did not believe these non-essential or superfluous allegations had been sustained by the proof. *Semble, United Rwys. Co. v. Corbin,* 109 Md. 444, 446, 460; *Bernheimer Bros. v. Brager,* 108 Md. 551, 553, 563. In *Hess v. United Rwys. Co.,* 137 Md. 605, 609, this form of prayer was again under consideration, and the court held its granting was not a ground of reversal, because no prejudice had resulted to the plaintiff under the circumstances of that particular case; so this form of prayer gathers no support from that decision. It is not unusual to find a declaration in tort containing allegations in the narrative of the cause of action which are either an unnecessary or an excessive statement of what the plaintiff proves to be the breach of duty and its consequences in damages, although the testimony so adduced is sufficient to sustain the action within the allegations of the pleading. This record affords an illustration in point, and does not disclose any basis for error in the rejection of the third prayer of the appellants, which was calculated, for the reasons stated, to mislead the jury.

The seventh prayer requested an instruction that if the jury "were unable to determine from the evidence how the accident happened," the verdict must be for the appellants. The coincidence that the form of the instruction in this case is the same as in the case of *Hess v. United Rwys. Co.,* 137 Md. 605, where it was approved *sub silentio,* is not conclusive of its propriety, since that must always be determined with reference to the nature and state of the proof in the particular case before the jury. *Balto. & O. R. Co. v. Stebbing,* 62 Md. 504, 519. The fact that a correct abstract proposi-

tion of law has been permitted to go to the jury may not have been reversible error for the reason that, having no practical bearing, it has no prejudicial effect one way or the other; and on the same ground, of its entire lack of utility, its rejection is justified. The prayer on this record was a mere skeleton statement of an abstract rule of law, and afforded no guidance for the jury. 2 *Poe, Pl. & Pr.,* sec. 300, p. 269. It had a somewhat confusing tendency to draw the minds of the jury away from the real issue, since ultimately it was not so much how the automobile upset and injured the plaintiff, as whose fault caused the accident. The better rule is to reject abstract propositions of law, since their natural tendency is to confuse and embarrass the jury. *Supra.*

The damage prayer was offered by the appellee, and is of the accepted form in those cases when the injuries sustained are continuing and permanent in their nature. *United Rwys. Co. v. Kolken,* 114 Md. 160, 162, 171; *New Theatre Co. v. Hartlove,* 123 Md. 79; *United Rwys. Co. v. Crain,* 123 Md. 334; *Annapolis v. Stallings,* 125 Md. 350; *Washington & R. Rwy. Co. v. Sullivan,* 136 Md. 203; *Balto. & O. R. Co. v. Harris,* 121 Md. 254, 256, 273. The appellee was permanently disfigured by the accident, and the prayer allows her to recover for the physical and mental suffering to which she has been, and will be, subjected, by reason of her injuries and disfigurement. The appellants' brief does not attack the prayer on this ground, and the authorities seem clear that disfigurement is an element to be considered in assessing past and prospective damages, when the injury is permanent. *Sutherland on Damages* (4th Ed.), secs. 93, 1241, 1242.

In *Chesapeake & Pot. Tel. Co. v. Miller,* 144 Md. 645, 648, such elements of damages were included in the third prayer of the plaintiff, which the court affirmed as the usual measure of damages prayer. In the opinion, the court spoke of this prayer as being that of the "defendant," but this was a clerical error, as appears from the context and will be ascertained by an inspection of the record. The vice which the appellant urges made the damage prayer defective is that there is no allegation nor proof that the appellee was quali-

fied to engage in any business pursuits, and yet the jury was allowed to take into consideration how far the injury was calculated to disable the appellee from engaging in business pursuits for which otherwise she would have been qualified. If there had been a special exception to the granting of the prayer for the reasons now assigned for the rejection of the prayer, as was the case in *Fletcher v. Dixon,* 107 Md. 420, 430, 431, that case would be authority in support of appellants' argument that there must be evidence in the record to support this claim by way of general damages; but, as has been repeatedly determined, this court is not permitted to consider the objection, because there was no special exception in the trial court to the prayer on the ground now taken. Code, art. 5, sec. 10; *Nichols v. Meyer,* 139 Md. 450, 460; *Heath v. Michael,* 145 Md. 277, 284; *Kelley v. Stanton,* 141 Md. 380, 385; *Fait v. Bannon,* 127 Md. 698; *Adkins v. Hastings,* 138 Md. 454, 463; *Streett v. Hodgson,* 139 Md. 137, 147; *Havens v. Reach Co.,* 139 Md. 481, 484.

The appellees' second prayer is assailed on the ground that it is not framed with special reference to the facts of the case, but is so general as to present no practical guide to the jury. The prayer submits to the jury to find that the appellants were copartners engaged in the business of selling automobiles, and that one of them, Charles A. White, "in the furtherance of said business, took the plaintiff for a ride for the purpose of demonstrating one of the defendants' automobiles to the plaintiff, if they so find; and if they further find that the said Charles A. White asked the plaintiff to drive and operate the defendants' said automobile under his direction, and the plaintiff did so drive and operate the same under his direction, and they further find there was an accident and the plaintiff was injured while she was so driving and operating the defendants' automobile, under the directions of the said defendant as aforesaid, and that they further find that the plaintiff's injury resulted directly from the want of ordinary care and prudence on the part of Charles A. White, and not from the want of ordinary care and prudence on the part of the plaintiff directly contributing to

the accident, then their verdict must be for the plaintiff and against the defendants."

The prayer quoted is vigorously assailed as being too general, and as not confining the jury to the issue made by the pleadings. The prayer did not refer to the pleadings, nor does it appear that the question of variance was raised at the trial in such a way that it can be considered on appeal. Code, art. 5, secs. 10, 11; *Western Union Tel. Co. v. Bloede,* 127 Md. 352; *Balto. & O. R. Co. v. Walsh,* 142 Md. 237; *Rasst v. Morris,* 135 Md. 256; *Fulton Bldg. Co. v. Stichel,* 135 Md. 544; *Burrier v. Cunningham Piano Co.,* 135 Md. 142; *West. Md. Ry. Co. v. Shatzer,* 142 Md. 274, 282; *Taxicab Co. v. Hamburger,* 146 Md. 122, 129; *Kelso v. Rice,* 146 Md. 267, 275; *De Crette v. Mohler,* 147 Md. 108, 114; *Baltimore v. Terio,* 147 Md. 330; *Askin v. Moulton,* 149 Md. 140, 145; 1 *Poe, Pl. & Pr.,* secs. 302, 301, p. 269; *Thillman v. Baltimore,* 111 Md. 131, 133; *Commercial Realty & Constr. Co. v. Dorsey,* 114 Md. 172, 174; *Chenoweth v. Hoey,* 135 Md. 97, 99; *Carr v. United Rwys. Co.,* 135 Md. 308.

There is, however, nothing in the prayer that is at variance with the pleadings; and if the appellants had desired to narrow the inquiry or to obtain a more explicit instruction, setting out the facts in detail, it was their province to submit such prayers at the trial table.

The only question before this court is whether, under all the evidence, the prayer was too general. The form of the prayer is general but, as was said of a similar prayer in *West Virginia Central R. Co. v. Fuller,* 96 Md. 652, 673, it "is not open to such criticism as would justify a reversal." *Balto. & O. R. Co. v. Trainor,* 33 Md. 542, 544, 553; *Phila., W. & B. Ry. Co. v. Stebbing,* 62 Md. 504, 511; *Phila., W. & B. Ry. Co. v. Hogeland,* 66 Md. 148, 162; *United Rwys. Co. v. Biedler,* 98 Md. 564; *Winner v. Linton,* 120 Md. 276, 280.

While the court expressed the opinion in *United Rwys. Co. v. Crain,* 133 Md. 332, 349, 350, that a similar prayer was too general under the circumstances of that case, where there

was but a single definite act of negligence relied upon, yet the court recognized that it was usually a good prayer, accredited by repeated approval on appeal, and declined to hold it reversible error. It may be said in this connection that, in addition to the wrongful act of the appellants declared on, there was proof tending to show that the instructor was also negligent, with respect to his inexperienced pupil, in not using due care in watching her driving at a dangerous point for a learner, and in not being ready to intervene as quickly as the occasion arose; and that, if he had been reasonably careful under the circumstances, he would have been able to have taken control of the steering wheel in time to save the appellee from injury. In this respect, the present case is to be distinguished from *United Rwys. Co. v. Crain, supra,* where the plaintiff only had one arrow in his quiver. See *Opecello v. Meads,* 152 Md. 29.

The appellants have dwelt on the judgment as excessive, but that question is not reviewable in this court, for the reasons stated in *Chiswell v. Nichols,* 139 Md. 442. The size of a verdict can only be given weight in this court in a comparatively restricted class of cases, where, if legal error is found in the rulings of the trial court, it becomes necessary to consider if the amount of the judgment is indicative of injury to the appellant. Since we find no error in the rulings of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs.*